JODI LINKER
Federal Public Defender
Northern District of California
KARTHIK RAJU
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Karthik_Raju@fd.org

Counsel for Defendant Lanza-Melgares

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

KEVIN LANZA-MELGARES,

Defendant.

**Case No.:** 26-517 RFL

**DEFENDANT'S SENTENCING MEMORANDUM**

**Court:** Courtroom 4, 17th Floor
**Hearing Date:** November 5, 2026
**Hearing Time:** 2:00 p.m.

## INTRODUCTION

Mr. Lanza-Melgares is 19 years old. He left Honduras at about 15, after leaving school in the eighth grade, to escape the poverty his family still lives in and the gangs that had already tried to recruit him. He followed a few friends across the Rio Grande in the hope of something better. What he found was a school that would not enroll him without a parent, and friends who taught him what to sell, how to sell it, and where. The offense before the Court, a $30 sale of fentanyl on a Tenderloin sidewalk, grew out of that start. It is his first federal case, and he has no criminal convictions.

This Memorandum asks the Court to accept the parties' agreed disposition under Rule 11(c)(1)(C), a sentence of time served plus one business day followed by three years of supervised release, with a condition barring him from the Tenderloin. Mr. Lanza-Melgares accepted the government's fast-track offer within weeks of his first appearance. He will be removed to Honduras, he understands that he can never lawfully return, and he has committed not to try. The agreed sentence is sufficient but not greater than necessary to serve the goals of sentencing.

## I. A SENTENCE OF TIME SERVED PLUS ONE BUSINESS DAY AND THREE YEARS OF SUPERVISED RELEASE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE SENTENCING GOALS OF THE § 3553(A) FACTORS.

In sentencing Mr. Lanza-Melgares, this Court must consider all the directives set forth in 18 U.S.C. § 3553(a); the Guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the Court to consider a number of additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of

the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); and the need to avoid unwarranted sentencing disparities, § 3553(a)(6).

**A. The Sentencing Guidelines**

The parties agree on the Guidelines calculation. The base offense level is 24 under U.S.S.G. § 2D1.1(a)(5) and (c)(8), based on a stipulated quantity of 40 to 160 grams of fentanyl. Three levels are subtracted for acceptance of responsibility under § 3E1.1, and two more under § 4C1.1 because Mr. Lanza-Melgares qualifies as a zero-point offender. The total offense level is 19. In criminal history category I, that produces an advisory range of 30 to 37 months.

**B. The History and Characteristics of Mr. Lanza-Melgares.**

Mr. Lanza-Melgares was born in Honduras. His parents live in the department of Francisco Morazán, where they earn their living selling fruit. The family is poor, and that poverty was one of the reasons he left. His three younger brothers, now 16, 15, and 14, live at home with their parents. They are about the age he was when he crossed the border.

Poverty was not the only pressure. While he was still a boy in Honduras, gang members took him to a remote place and tried to recruit him. He left school in the eighth grade. Around 2022, at roughly 15, he followed a few friends north and crossed the Rio Grande into the United States. He came out of hope for a better life. He had never been in this country before, and he has never been deported.

That hope met an early wall. Mr. Lanza-Melgares tried to enroll in school here. School officials told him he needed a parent to register him and that he could not enroll on his own. He had no parent in this country to bring him. The one institution that could have given a 15-year-old structure, English, and a path to lawful work turned him away.

The friends he had followed filled the gap. They showed him what to sell, how to sell it, and where. He was a teenager in a foreign country, with no family here and no school to attend, and the people closest to him made the drug trade the easiest path in front of him. By the time of his arrest, he was living in a rented apartment in Oakland.

The arrests that followed reflect that beginning. As the plea agreement states, Mr. Lanza-Melgares has been previously arrested in San Francisco on state drug charges. He was also arrested on a burglary charge in November 2024. None of those arrests led to a conviction, and he has no criminal history points. What they do show is a cycle that began when he was a teenager and that no one interrupted.

Mr. Lanza-Melgares has a plan for his return. He will go back to his parents and to the fruit-selling work that supports his family. He understands that he will be removed after this case, and he has committed not to return to the United States. He accepted responsibility at the earliest opportunity, took the government's fast-track offer without delay, and has contested no part of the case.

**C. The Nature and Circumstances of the Offense**

The offense was a single hand-to-hand sale of less than one gram of fentanyl for $30. On the night of May 6, 2026, an undercover officer walking on Taylor Street made eye contact with Mr. Lanza-Melgares and asked whether he had fentanyl. Mr. Lanza-Melgares led the officer a short way up the block and handed over 0.944 grams in exchange for $30 in marked bills. Officers arrested him around the corner minutes later. Mr. Lanza-Melgares had $741, including the marked bills, and a cellphone.

There were no weapons and no violence, and nothing suggests that Mr. Lanza-Melgares held any role above the street. The harm fentanyl causes in the Tenderloin is real, and the defense does not minimize it. But the sentence must answer for this conduct and this young man. It cannot be calibrated to a public health crisis that no single street seller created and no single sentence will end.

**D. The Sentencing Factors Under 18 U.S.C. § 3553(a)**

The purposes of sentencing do not call for further incarceration. Mr. Lanza-Melgares was 19 when he committed this offense, and he was drawn into the drug trade soon after he arrived here at 15. The Sentencing Commission has recognized that youth bears directly on culpability. Youthful individuals “generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood,” and they “also are more amenable to rehabilitation.” U.S.S.G. § 5H1.1, p.s. (2024). The Commission identified risk factors that “contribute

to involvement in criminal justice systems," among them "environment, adverse childhood experiences, . . . lack of educational opportunities, and familial relationships." *Id.* Each is present here. Mr. Lanza-Melgares grew up poor, was targeted by gangs as a boy, left school in the eighth grade, was turned away when he tried to enroll here, and lived in this country without a parent. The Commission removed that policy statement in 2025, but it made clear that the removal "does not limit the information courts may consider in imposing a sentence." U.S.S.G. ch. 1, pt. A, intro. comment. (2026); *see also* U.S.S.G. § 1B1.4 (2026).

A longer term is not needed to protect the public or to deter Mr. Lanza-Melgares. His conviction is an aggravated felony, 8 U.S.C. § 1101(a)(43)(B), and his removal is, as the plea agreement states, a virtual certainty. He will be permanently inadmissible to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(II), (a)(9)(A)(ii). If he came back, he would face prosecution for illegal reentry with a 20-year maximum, 8 U.S.C. § 1326(b)(2), along with revocation of his supervised release. Those consequences end his presence in the Tenderloin more completely than additional months in custody could.

This prosecution also does what the earlier arrests never did. None of those state cases ended in a conviction, and none changed the circumstances of a young man living here without family and surrounded by the friends who had taught him to sell. This case ends in a federal felony conviction, removal, and a permanent bar to return. That is a decisive break from the cycle, and it is the one most likely to hold.

General deterrence does not justify a longer sentence. Removing one street-level seller from an open-air market does little to reduce supply, and young people drawn into that market by poverty and circumstance are not deterred by marginal increases in custody. The government has agreed that the proposed sentence is reasonable and appropriate. Plea Agreement ¶ 17. The need to avoid unwarranted disparity points the same way. Defendants in comparable fast-track posture routinely receive dispositions like the one the parties propose, and the agreed sentence keeps Mr. Lanza-Melgares in line with them.

The certainty of removal carries real punitive weight. Mr. Lanza-Melgares came to this country at 15 and has spent the rest of his adolescence here. He will leave with a federal felony conviction

and no lawful path back. That consequence is severe and permanent. Together with the time he has served since his arrest on September 30, 2026, it provides just punishment and reflects the seriousness of the offense.

Rehabilitation supports the agreed sentence. Mr. Lanza-Melgares will return to his parents in Francisco Morazán and work beside them selling fruit. Removal separates him, permanently, from the friends who brought him into the drug trade. He returns to a home with three younger brothers who are now the age he was when he left.

**CONCLUSION**

For these reasons, the defense respectfully asks the Court to accept the parties' agreed disposition. Mr. Lanza-Melgares came to this country as a child, was turned away from school, and was led into the drug trade by the friends he had followed here. He is 19, he has no convictions, and this is his first federal case. He accepted responsibility at once and faces certain removal and a permanent bar to return. A sentence of time served plus one business day, followed by three years of supervised release and prompt removal, reflects the seriousness of the offense and the person before the Court. It is sufficient, but not greater than necessary.

Dated: November 2, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

______________________________

KARTHIK RAJU
Assistant Federal Public Defender