CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7368
Email: nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN LANZA-MELGARES,<br><br>Defendant. | CASE NO. 3:26-CR-00517 RFL<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Hearing Date: November 5, 2026<br>Hearing Time: 2:00 p.m.<br>Judge: Hon. Rita F. Lin<br>Court: Courtroom 4; 17th Floor |

## I. OVERVIEW

The government and the defendant, KEVIN LANZA-MELGARES, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (hereafter, "the Tenderloin") through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited (or no) criminal history, leading the government to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes

convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the government and the defendant believe that a below-Guidelines sentence—accounting for the time already served plus one day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. P. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1); U.S.S.G. § 6A1.1; Crim. L.R. 32-1(b). The government respectfully submits that the record here—including the criminal complaint, the plea agreement, and the parties' sentencing memoranda, which each and collectively detail the offense conduct and other factors relevant under Section 3553—enable the Court to meaningfully exercise its sentencing authority under Section 3553 and to proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at sentencing.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

| | | |
|---|---|---|
| a. | **Base Offense Level** [U.S.S.G. § 2D1.1(a)(5), (c)(8)]:<br>- *40 g – 160 g fentanyl* | **24** |
| b. | **Acceptance of Responsibility** [U.S.S.G. § 3E1.1]: | **-3** |
| c. | **Adjustments** [U.S.S.G. § 4C1.1]: | **-2** |
| d. | **Total Offense Level**: | **19** |

The government calculates a Criminal History Category of I (0 points).[1]

[1] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database. That report reflects that the defendant has no prior criminal convictions. The defendant does have nine prior arrests on drug charges since August 2023, as well as an arrest on first-degree burglary charges in November 2024. *See* Plea Agreement ¶ 2.

A Total Offense Level of 19 and a Criminal History Category of I yields an advisory Guidelines range of 30–37 months. *See* U.S.S.G. ch. 5, pt. A.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the mandatory $100 special assessment.

## IV. SENTENCING RECOMMENDATION

Consistent with the plea agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes, among other things, a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from which the defendant's drug trafficking conviction arises.

### A. Section 3553 Factors

#### 1. ***Nature and Circumstances of Offense; History and Characteristics of Defendant***

The defendant is a 19-year-old Honduran national. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service. To the government's knowledge, the defendant has no prior criminal convictions—though he does have as many as 10 prior arrests in the United States, most of them on suspicion of drug trafficking—and is therefore in Criminal History Category I.

On May 6, 2026, at about 10:10 p.m., an undercover San Francisco Police Department officer (UC) approached the defendant and a second man on the street in the Tenderloin District of San Francisco. The UC asked the defendant if he had any "iso," which is a slang term for fentanyl, to which the defendant replied, "how much?" When the UC said s/he wanted $30 worth, the defendant told the UC to walk with him, and the defendant, the second man, and the UC walked together briefly before the defendant crouched down behind a car and took a black plastic bag from the second man, who stood near the defendant and acted as a lookout. The defendant reached into the black plastic bag, opened another bag inside, and pulled out two small pieces of an off-white chalky substance resembling fentanyl. The defendant handed the suspected fentanyl to the UC in exchange for $30 in marked funds.

Following the sale, the UC gave a prearranged signal to surveilling officers, who arrested both the defendant and the second man nearby. *See* Dkt. 1 at ¶¶ 13–16; Plea Agreement ¶ 2.

The substance the defendant sold to the UC weighed 0.944 grams (net) and later tested positive for fentanyl. In a search incident to arrest, officers also found and seized, among other things, more than $700 in cash in the defendant's pants pocket, as well as two digital scales and 46.378 grams (net) of additional fentanyl in the possession of the man who had acted as the defendant's lookout. *See* Dkt. 1 at ¶¶ 17–20; Plea Agreement ¶ 2. The defendant has admitted the money seized from him was proceeds of drug trafficking and thus that it is forfeitable to the government. *See* Plea Agreement ¶¶ 2, 13.

The defendant was initially charged in state court but was released and later arrested in San Francisco on September 30, 2026. He was charged in this case on October 6, 2026, and made his initial appearance in federal court on October 8, 2026, at which time the pending state case was dismissed. The defendant agreed to remain in custody during the pendency of his federal case. On October 28, 2026, he was arraigned on an Information charging one count of distribution of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkt. 9. In the plea agreement, the defendant acknowledges that he knew (i) the substance he sold to the UC on May 6, 2026, contained fentanyl; and (ii) it was illegal for him to sell fentanyl. *See* Plea Agreement ¶ 2. He further acknowledges that his conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States." Plea Agreement ¶ 1.

#### 2. *Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant*

The Tenderloin, defined in the plea agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants—including staggering amounts of overdoses and fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Notwithstanding the defendant's nonexistent criminal record, the applicable Guidelines range for the defendant's conduct is 30–37 months in light of the relevant conduct and amount of fentanyl the defendant and his accomplice possessed when they were arrested. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the applicable Guidelines range but one that the government submits is appropriate given the defendant's status as a street-level drug dealer, his scant criminal history, the unique problem facing the Tenderloin, and the need for deterrence and protection of the public.

To benefit from an agreement by the government to recommend a sentence of time served plus one day, the defendant waived detention and has been in continuous custody since his arrest in late September 2026. He also waived indictment, agreed promptly to plead guilty and proceed to sentencing, and agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of his supervised release terms) will invite new charges and/or supervised release violations.

This disposition results in a drug-trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed with which this case has moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B. The Necessity of the Proposed Special Conditions of Supervised Release**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty. *See* 21 U.S.C. § 841(b)(1)(C). It is also essential to this disposition. In particular, the special stay-away condition allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug dealers from the Tenderloin (given the defendant has remained in custody since he was arrested) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, he will also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Plea Agreement ¶ 10. Combined with a suspicionless search condition—to which the parties have also agreed, *see id.*—the goals of Section 3553(a), including protection of the public and meaningful deterrence, will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking: defendants previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently return to the Tenderloin to do so, even following removal from the United States. *See, e.g.*, *United States v. Erazo-Centeno*, No. 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553 CRB.

On the facts of this particular case, and in light of the provisions of the parties' plea agreement, the government respectfully submits that the disposition recommended herein is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to time served plus one day, to be followed by a term of supervised release of three years. The government further requests that the Court include as conditions of supervised release the special conditions agreed to by the parties in the plea agreement, including a stay-away from the Tenderloin.

DATED: November 2, 2026

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Nicholas Parker*
NICHOLAS M. PARKER
Assistant United States Attorney